IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GEORGE ALVIN WHEELER, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:10-CV-00966-DGK |
| BRAD LYNN, et. al., | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

This is a civil lawsuit arising from Plaintiff George Wheeler's arrest in the early morning of June 21, 2008. Wheeler was arrested at a sobriety checkpoint run by the Kansas City, Missouri Police Department and held without bond overnight on suspicion of driving under the influence of cannabis. After his release, Wheeler underwent a drug screen which found no alcohol or drugs in his system. Wheeler, an attorney who is representing himself, vehemently denies he had anything to drink that evening or that he has ever used drugs. Wheeler is suing officers Brad Lynn and Dana Mauzy under 42 U.S.C. § 1983 for wrongful arrest, alleging they arrested him out of spite because he angered Officer Mauzy during the stop.

Now before the Court is Defendants' Motion for Summary Judgment (doc. 61). Defendants claim their actions were reasonable and they had probable cause to arrest Wheeler. Finding that material facts are in dispute here such that the Court cannot grant Defendants summary judgment or find that they are entitled to qualified immunity at the present time, the motion is DENIED.

**Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

Defendants Dana Mauzy and Brad Lynn are police officers employed by the Kansas City, Missouri, Police Department. In the late evening of June 20/early morning of June 21, 2008, officers Mauzy and Lynn were working at a sobriety checkpoint at Blue Ridge Boulevard and Holiday Drive in Kansas City, Missouri. At approximately 12:17 a.m., Plaintiff George Wheeler approached the sobriety checkpoint in his car. Plaintiff was directed by several different officers

2

to go in different directions, and he stopped. Earlier in the day, Plaintiff, an attorney, had been attending a Continuing Legal Education seminar at Crown Center in Kansas City, Missouri.

Officer Mauzy was the first officer to contact Wheeler. Wheeler was still wearing his name tag from the seminar. Officer Mauzy claims Wheeler had a faint odor of alcoholic beverage on his breath, his eyes were bloodshot and glassy, and he was mumbling. Plaintiff disputes these allegations. Viewing the record in the light most favorable to the Plaintiff, for purposes of resolving this motion the Court finds Wheeler did not have the smell of alcohol on his breath, his eyes were not bloodshot and glassy, and he was not mumbling.

Wheeler declined to answer any questions. He told Officer Mauzy that he had not had any alcohol to drink, that he did not take drugs, and that he would not answer any questions. When Plaintiff refused to answer any questions, Officer Mauzy's demeanor changed and she became angry.

Officer Mauzy then gave Wheeler three field sobriety tests. Wheeler's performance is in dispute. Officer Mauzy contends he failed all three; Wheeler has testified he did not fail any of them.

Officer Mauzy then called over Officer Lynn, who is a certified drug recognition expert. Officer Lynn also claims that when he met Wheeler, Wheeler's eyes were glassy, his eyelids were droopy, and there was a faint odor of an alcoholic beverage on his breath.

Wheeler submitted to a breath test to determine his blood alcohol concentration ("BAC") level. Officer Lynn administered the test using an Intoxilyzer 5000. The parties dispute how many tests were given and the results. Wheeler claims that he was tested three times, that he saw the results on the machine, and that the results were all 0.00. That is, they showed no alcohol in his blood. Officer Lynn claims only one test was given, and it measured a blood alcohol

concentration of 0.01.[1]  Viewing the record in the light most favorable to the Plaintiff, for purposes of resolving this motion the Court finds that whether there was one test given or three, each Intoxilyzer test found no alcohol in Wheeler's blood.

Officer Lynn then conducted a drug recognition examination ("DRE").  He conducted the DRE because the Intoxilyzer results were not consistent with his perception of Wheeler's level of impairment.  As part of the DRE, Lynn conducted several physical tests on Wheeler, including a balance test, a finger-to-nose test, and lack-of-convergence test.  Lynn also took Wheeler's blood pressure and listened to his heartbeat with a stethoscope.  Drug recognition experts check a suspect's blood pressure, pulse, and temperature because certain drugs cause the body to do things involuntarily.  Persons under the influence of cannabis, for example, may have increased blood pressure and pulse among other things.  Wheeler exhibited an increased or higher than normal blood pressure and pulse.

Officer Lynn also ordered a urinalysis.  The results of the test, however, were not available that night.

Officer Lynn subsequently arrested Wheeler for driving under the influence of cannabis.  Because the checkpoint was a DUI checkpoint, Officer Lynn had pre-written tickets that read "driving while under the influence of alcohol."  In issuing Wheeler's ticket, Lynn marked out the word "alcohol" and wrote "cannabis."  Wheeler's ticket states he was arrested for driving "while under the influence of cannabis, to a degree which renders him incapable of safely driving a vehicle."  After Wheeler was arrested, the police towed his car.  The time was 2:13 a.m. on June 21st.  Wheeler had been at the checkpoint for approximately 2 hours.

---

[1] The threshold for driving with excessive blood alcohol content under Missouri law is 0.08 or greater.  Mo. Rev. Stat. § 577.012.1.

Immediately after his release from the Kansas City Municipal Jail the next morning, Wheeler went to Research Medical Center and underwent a physical examination and toxicology review. He was examined at 7:30 a.m. His blood pressure was 180 over 108, his pulse was 111, and he had a temperature of 98.01 degrees Fahrenheit. The toxicology review found no evidence of alcohol or drug use.

The municipal charge against Wheeler was dismissed on September 17, 2008.

## Discussion

Section 1983 provides that no person acting under color of state law may violate any rights secured by the Constitution or laws of the United States.[2] Section 1983 does not create any substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim under the statute, a complaint must allege that the defendant deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States while acting under color of state law. *Walker v. Reed*, 104 F.3d 156, 157 (8th Cir. 1997).

Count I, the sole remaining claim in this case, alleges that Defendants violated Wheeler's Fourth, Fifth, and Fourteenth Amendment rights and section 1983 by falsely arresting him. To prevail on this claim Wheeler must show that the officers were (1) acting under color of state law (2) when they arrested him, and (3) they arrested him without probable cause. *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995). The first two elements are present here; the question is whether the officers had probable cause to arrest Wheeler for driving while under the influence of cannabis.

---

[2] "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress." 42 U.S.C.A. § 1983.

**A.   A jury could find Defendants lacked probable cause to arrest Plaintiff.**

Officers have probable cause "if, at the moment the arrest was made, 'the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the plaintiff] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  This determination is made by looking at whether the arresting officers had probable cause at the time of arrest, not whether the decision to arrest could be justified by information learned after the arrest.  *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999).

Viewing the record in the light most favorable to the Plaintiff, the Court holds a reasonable jury could find the following:  Wheeler had not been drinking the evening of June 20-21, and he has never used illegal drugs.  After he was stopped at the sobriety checkpoint, he angered the police by refusing to answer their questions.  In response, the officers falsely claimed that they smelled alcohol on his breath, that his eyes were bloodshot and his eyelids were droopy, and that he was mumbling so that they could conduct drug and alcohol tests on him.  Officer Lynn then used the fact that he found Wheeler's blood pressure and pulse rate higher than normal to justify arresting him for driving under the influence of cannabis.  A reasonable person, however, would not have believed that Wheeler had committed, or was committing , the crime of driving under the influence of cannabis.  Consequently, Wheeler was falsely arrested.

A reasonable jury could make these findings because the record consists of more than just Plaintiff's self-serving testimony.  Plaintiff's testimony is corroborated by two different pieces of objective evidence, the breathalyzer test results and the toxicology review.  This evidence supports Wheeler's assertion that he had not been drinking or using marijuana that night, that he

6
Case 4:10-cv-00966-DGK   Document 76   Filed 05/18/12   Page 6 of 9

was not displaying any symptoms of alcohol or drug use as the officers claimed, and that the officers simply arrested Wheeler to harass him. While the evidence is hardly overwhelming, it is enough to allow Plaintiff's wrongful arrest claim to go to the jury.

**B.      Defendants are not entitled to qualified immunity at the present time.**

If the Court finds the officers lacked probable cause, "a second inquiry is necessary to determine whether the officers are nonetheless entitled to qualified immunity. The officers are immune from liability if, in light of clearly established law and the information known to the officers, a reasonable officer could have believed the arrests were supported by probable cause." *Peterson*, 60 F.3d at 473-74.

"Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It provides protection "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1996). An officer is entitled to qualified immunity unless (1) the facts, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Nance*, 586 F.3d at 609. Although qualified immunity is an affirmative defense, the plaintiff must allege and present evidence from which a reasonable jury could find that the

officer violated the plaintiff's constitutional rights. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

If the allegation here were simply that the officers arrested Wheeler for driving under the influence of cannabis because they mistakenly believed that having higher than normal blood pressure and an increased pulse rate was probable cause of this crime, the officers would be entitled to qualified immunity. After all, it was not clearly established at the time that such an arrest is unconstitutional such that a reasonable officer would have known it was illegal. And police officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (quotation omitted).

The allegation here, however, is that the Defendants *intentionally* made a meritless arrest of Wheeler because he angered them. Qualified immunity does not shield officers engaged in such behavior. Qualified immunity is defeated if an official "'took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury.'" *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (emphasis in original) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)).

In denying qualified immunity, the Court notes that as in *Moore v. Indehar*, this is not a case where the plaintiff's only chance of defeating qualified immunity rests in the possibility that the jury might disbelieve the officer's testimony. 514 F.3d 756, 761 (8th Cir. 2008). The record here consists of the Plaintiff's testimony and independent evidence which corroborates his testimony. This is sufficient evidence of malicious intention to defeat qualified immunity.

Consequently, viewing the record in the light most favorable to the Plaintiff, the Court cannot grant Defendants qualified immunity. Of course, if at trial Wheeler fails to prove that the

officers intentionally arrested him without probable cause, the officers will be entitled to qualified immunity.

## Conclusion

Finding that material facts are in dispute here such that the Court cannot grant Defendants summary judgment or find that Defendants are entitled to qualified immunity, Defendants' Motion for Summary Judgment (doc. 61) is DENIED.

**IT IS SO ORDERED.**

Date:  May 18, 2012     /s/ Greg Kays
                        GREG KAYS, JUDGE
                        UNITED STATES DISTRICT COURT